DONALD ARTHUR COMEAU,
as Personal Representative of the
Estate of Muriel Edna Diluzio Comeau,

          **Plaintiff,**

-vs-                                **Case No. 6:09-cv-1907-Orl-28KRS**

VOLUSIA COUNTY, MARILYN
CHANDLER-FORD, in her supervisory
capacity, and PRISON HEALTH
SERVICES, INC.,
                **Defendants.**

---

# ORDER

Plaintiff sued the Defendants alleging violations of both federal law and Florida state law in connection with the death of Muriel Edna Diluzio Comeau ("Comeau") during her incarceration at the Volusia County Jail. This cause is before the Court on the motions to dismiss filed by Defendants Volusia County, Marilyn Chandler-Ford, and Prison Health Services, Inc. (Docs. 5 & 6). Plaintiff has filed Responses (Docs. 7 & 8) thereto, and the matter is now ripe for adjudication.

## I. Background

### A. Parties

Donald Arthur Comeau ("Plaintiff")—Comeau's husband—is the personal representative of Comeau's estate and has filed suit on the behalf of her estate, himself, and their child, Vincent James Comeau. Volusia County ("the County") is a political subdivision

of the State of Florida charged with maintaining and administrating the Volusia County Branch Jail and Volusia County Correctional Facility ("the Jail"). Marilyn Chandler-Ford ("Chandler-Ford") was the administrator of the Jail during the times relevant to this action and was responsible for the hiring, retention, training, and supervision of correctional officers and contractors working at the Jail. Prison Health Services, Inc. ("PHS") is a Delaware corporation contracted by the County to provide medical and psychiatric services to inmates at the Jail.

B.  Facts[1]

On August 27, 2007, Comeau was arrested for driving under the influence and was taken to jail early in the morning on August 28. (Am. Compl. ¶¶ 9-10). In the receiving area, Comeau received a medical screening during which she informed the nurse that she had a history of mental health issues and a prior diagnosis of bipolar disorder but denied thoughts of suicide or a history of attempted suicides. (Id. ¶¶ 11-12). Approximately forty-five minutes later, Comeau began verbally abusing and threatening the staff, stating that she had "nothing to live for." (Id. ¶ 13). "Jail staff" placed Comeau under constant watch in an individual cell because of this behavior.[2] (Id.). "Mental Health staff" examined Comeau later that morning and cleared her removal from constant watch after Comeau apologized and explained that her behavior was due to her intoxication and that she was not suicidal because she had a

---

[1]All facts asserted in the Amended Complaint are taken as true for the purposes of this Order.

[2]Plaintiff does not detail in the Amended Complaint whether "jail staff" are employees or agents of either Volusia County or PHS.

son to live for.[3]  (Id. ¶ 14).

Early the next evening, Comeau attempted to hang herself with a bed sheet tied to her cell door.  (Id. ¶ 15).  When this attempt failed, Comeau began cutting her wrists with an inhaler, an action that prompted other inmates to alert the Jail staff.  (Id.).  Once the Jail staff arrived, they called a "Code White"—a code signifying an inmate's attempted suicide—and proceeded to restrain Comeau.  (Id.).  Mental Health staff assessed Comeau the next day, and after she denied an intent to injure herself, Mental Health cleared her for release from restraints but maintained the constant watch order.  (Id. ¶ 16).  Later that same day, the Medical Department received a fax from Comeau's sister-in-law, Ellen R. Walsh, explaining that Comeau suffered from anxiety, depression, and possibly bipolar disorder and warning that a sudden stopping of her medications could cause medical problems.  (Id. ¶ 17).  After another day passed without Comeau attempting to injure herself, Mental Health reevaluated her and downgraded her status from constant watch to fifteen-minute watch.  (Id. ¶ 18).  Despite this downgraded status, the Mental Health staff decided that Comeau should remain in mental health confinement.  (Id.).

On September 2, Mental Health evaluated Comeau again and cleared her from the fifteen-minute watch and mental health confinement.  However, due to her previous threatening conduct towards the staff, Comeau remained in administrative confinement.  (Id. ¶ 19).  Then, Comeau again told staff that she "had nothing to live for and felt like dying," resulting in her placement on constant watch and mental health confinement.  (Id. ¶ 20).

---

[3]Plaintiff again does not detail whether "mental health staff" are employees or agents of either Volusia County or PHS.

Mental Health next evaluated Comeau on September 4 and downgraded her to fifteen-minute watch status and moved her near the Officer's Station of the North Wing where she could be better monitored because there was no Constant Watch Officer available in the mental health unit at that time.  (Id. ¶ 21).  Comeau was removed from fifteen-minute watch and mental health custody on September 9, 2007.  (Id. ¶ 22).  After a sentencing hearing for the driving under the influence charges, Comeau was sentenced to time served and probation before being released from custody.  (Id. ¶ 23).

One week later, Comeau was arrested for possession of crack cocaine and was booked into the Jail; she was provided an orange jumpsuit but allowed to keep her own shoes, including the shoe laces.  (Id. ¶¶ 24-25).  An EMT from the Medical Department then screened Comeau and referred her to Mental Health after Comeau disclosed a history of mental health problems, including major depression and her attempted suicide the previous month.  (Id. ¶ 26).  During this initial screening, Comeau denied current thoughts of suicide or self-injurious behavior.  (Id.).  Jail staff noted this history and placed Comeau on fifteen-minute watch pending an evaluation by Mental health staff.  (Id. at 27).

Comeau made her first appearance on the crack cocaine possession charge on September 27, 2007.  During that first appearance, Comeau contacted Amy Militello ("Militello")—Comeau's sponsor at a faith-based substance abuse program—and requested that Militello pay her bond.  (Id. ¶ 28).  When Militello refused, Comeau threatened to commit suicide by hanging herself with her bed sheet and ended the phone call.  (Id. ¶ 29).  Militello called 9-1-1 to report Comeau's threat, and 9-1-1 informed the jail staff of Comeau's threat. (Id. ¶¶ 30-31).  When she returned to her cell, jail staff placed Comeau on constant watch.

(Id. ¶ 32).

Thomas Lee Cochenour ("Cochenour")—a registered nurse and employee of PHS—examined Comeau at Mental Health at approximately 6:23 p.m.[4] (Id. ¶¶ 33, 62). During that exam, Comeau denied making threats of suicide and claimed that she would not do such a thing because "she was religious." (Id.). Cochenour released Comeau from suicide watch, and Comeau was returned to her cell at 6:40 p.m. (Id. ¶¶ 33-34). After observing Comeau in her cell at 7:05 p.m., 7:20 p.m., 8:00 p.m., and 8:46 p.m., staff returned at 10:18 p.m. and found Comeau hanged with shoe laces tied to her bunk and around her neck. (Id. ¶¶ 35-36). Jail staff performed CPR and continued until first responders took over and pronounced Comeau dead at 10:45 p.m. (Id. ¶¶ 37-38).

## II.  Standard of Law

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure

_____

[4]The Court refers to Cochenour as an "employee" of PHS for the purposes of this Order alone.  Plaintiff refers to Cochenour as "an agent, servant[,] or employee of [PHS]," but the extent of the relationship between Cochenour and PHS is not clear to the Court. (Am. Compl. ¶ 62).

12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." <u>LaGrasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

<u>III.  Analysis</u>

<u>A.  Wrongful Death Claims (Counts I & III)</u>

<u>I.  Count I—The County</u>

In the Amended Complaint, Plaintiff alleges that the County had a nondelegable duty to exercise reasonable care to ensure the health and safety of Comeau during her incarceration.  (Doc. 2 ¶ 45).  Plaintiff avers that the County, "through its servants, agents, and employees," acted negligently and violated this duty by: (1) allowing Comeau to retain her shoe laces; (2) failing to maintain a constant watch on Comeau; (3) failing to maintain close supervision of Comeau; (4) failing to adequately screen and assess Comeau's risks for suicide and other self-injurious behavior; (5) failing to adequately train and supervise jail staff in the prevention of an inmate's suicide; (6) failing to train and supervise PHS to ensure that PHS conducted proper screenings and assessments of inmates at risk of suicide; (7) failing to staff the jail with adequately trained and licensed mental health providers, including psychologists and psychiatrists; (8) failing to ensure that mental health screenings were performed by properly trained and licensed staff or contractors; (9) failing to follow its own policies and procedures regarding suicide prevention; (10) failing to comply with Florida's Model Jail Standards regarding the prevention of inmate suicide; (11) failing to provide Comeau with her prescribed psychiatric medications; and (12) failing to adopt and implement adequate policies and procedures to prevent inmate suicide.  (<u>Id.</u> ¶ 47).

The County now moves to dismiss Count I, arguing that Plaintiff has failed to state a claim for wrongful death. Specifically, the County avers that it is protected by sovereign immunity because the alleged acts of negligence were acts committed by a private contractor as opposed to an agent or employee of the County.[5] Taking the allegations of the Amended Complaint as true, the County's first defense fails at this stage because Plaintiff has alleged in Count I that the acts of negligence were committed by agents and employees of the County, not by an independent contractor.[6] The veracity of this allegation will be tested through discovery.

### ii. Count III—PHS

Regarding PHS, Plaintiff argues that PHS owed Comeau a duty to use the appropriate level of care as a reasonable health care provider in light of all the relevant surrounding circumstances, (Am. Compl. ¶ 63), and that PHS is vicariously liable for the negligent acts of its agents, servants, and employees committed during the scope of their employment with PHS, (id. ¶ 61). Specifically, Plaintiff asserts that PHS breached its duty to Plaintiff by: (1) allowing Comeau to retain her shoe laces; (2) failing to maintain a constant watch on Comeau; (3) failing to maintain close supervision of Comeau; (4) failing to adequately screen

---

[5]The County also argues that to the extent Plaintiff attempts to maintain a claim for improper retention of PHS, the County is protected by the discretionary function exception of Florida's waiver of sovereign immunity. (Doc. 5 at 5-6). This argument, however, need not be addressed, as Plaintiff states in his response that the Amended Complaint does not allege a claim for negligent retention. (Doc. 7 at 6).

[6]The relationship between the County and PHS is unclear to the Court at this stage. The Court has not been provided a copy of the contract detailing the relationship between the County and PHS or the degree of control retained or exercised by the County over PHS.

and assess Comeau's risks for suicide and other self-injurious behavior; (5) failing to adequately train and supervise health care personnel to ensure that proper screenings and assessments were performed for inmates at risk for suicide; (6) failing to provide adequately trained and licensed mental health providers, including psychologists and psychiatrists; (7) failing to ensure that mental health screenings were performed by properly trained and licensed staff or contractors; (8) failing to follow the County's policies and procedures regarding suicide prevention; (9) failing to follow its own policies and procedures regarding suicide prevention; and (10) failing to adopt and implement adequate policies and procedures to prevent inmate suicide. (Id. ¶ 64).

PHS argues that Count III should be dismissed because Plaintiff failed to comply with certain pre-suit requirements of chapter 766, Florida Statutes. PHS asserts that Plaintiff has not complied with section 766.104(1), Florida Statutes, because the Amended Complaint "does not allege compliance with the presuit provisions of Chapter 766, Florida Statutes" and that "there are no references regarding pre-suit compliance" in the Amended Complaint.[7] (Doc. 6 at 5). Additionally, PHS argues that Plaintiff filed the Amended Complaint prior to the running of the statutorily required ninety-day period between delivery of a notice of intent

---

[7]Section 766.104(1) provides:
No action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or in contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate of counsel that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant.
§ 766.104(1), Fla. Stat.

to sue and the filing of a complaint as required in section 766.106(3)(a). (<u>Id.</u> at 4-5).

Section 766.106(3)(a) provides in part that "[n]o suit may be filed for a period of 90 days after notice is mailed to any prospective defendant." § 766.106(3)(a), Fla. Stat. Plaintiff, in response to PHS's motion, admits that the Amended Complaint was filed prior to the expiration of the ninety-day period and simply argues that PHS could not have been prejudiced by the timing of the filing.[8] (Doc. 8 at 5). However, "[c]ompliance with the presuit requirements is a condition precedent to filing a medical malpractice action." <u>Fla. Hosp. Waterman v. Stoll</u>, 855 So. 2d 271, 276 (Fla. 5th DCA 2003). By his own admission, Plaintiff did not comply with the statutorily mandated waiting period prior to filing suit, and accordingly, Plaintiff has not met all the condition precedents to filing this claim. A failure to comply with this prerequisite, however, does not deprive the court of subject matter jurisdiction, <u>see</u> <u>Kukral v. Mekras</u>, 679 So. 2d 278, 282-84 (Fla. 1996), and Plaintiff will be granted leave to file a Second Amended Complaint.[9]

_____

[8]Additionally, Plaintiff argues that the Court should not consider the information regarding the dates of the notice of intent to sue and the filing of the Amended Complaint raised in PHS's motion to dismiss because this information was not contained in the Amended Complaint. The Court rejects this contention. Plaintiff alleged that "[a]ll conditions precedent to filing this action have been complied with, waived[,] or otherwise fulfilled, including a pre-suit notice of claim pursuant to Fla. Stat. § 768.28," (Am. Compl. ¶ 42). This Court will not disallow a defendant from asserting a defense that all conditions precedent indeed have not been met merely because Plaintiff did not allege detailed facts regarding this required pre-suit compliance.

[9]PHS also argues that Count III should be dismissed because PHS is immune from suit pursuant to section 768.28(9), Florida Statutes, as an agent of the state. Under Florida law, the status of a party as an agent to whom the protection of section 768.28(9) would flow is a question of fact turning upon the degree of control retained or exercised by the state. <u>See</u> <u>Stoll v. Noel</u>, 694 So. 2d 701, 703 (Fla. 1997). Other than a general assertion that it "provided medical and psychiatric services to inmates at the Volusia County Branch Jail

<u>B. § 1983 claims—Counts II (the County), IV (PHS), and V (Chambers-Ford)</u>

<u>I. Count II—the County</u>

In Count II, Plaintiff claims that the County failed to protect Comeau "from a strong likelihood of self harm, including suicide" in violation of the Eighth and Fourteenth Amendments.[10] (Am. Compl. ¶ 53). Plaintiff alleges that the County "acted with deliberate indifference when it failed to take reasonable steps to prevent [Comeau] from harming herself" despite the County's knowledge of "a strong likelihood that . . . Comeau would harm herself while incarcerated at the jail." (Id. ¶ 55). Plaintiff argues that the County acted with deliberate indifference when it (1) allowed Comeau to retain her shoe laces; (2) failed to maintain a constant watch on Comeau; (3) failed to maintain close supervision of Comeau; (4) failed to adequately screen and assess Comeau's risks for suicide and other self-injurious behavior; (5) failed to adequately train and supervise jail staff in the prevention of an inmate's suicide; (6) failed to train and supervise PHS to ensure that PHS conducted proper

_____

pursuant to a contract with Volusia County," PHS has provided no support for its contention that it is an agent of the state. (Doc. 6 at 5). PHS has not attached a copy of the employment contract with Volusia County detailing the degree of control retained by the state or expressing the intent of PHS and the County to create an agency relationship. Accordingly, this Court cannot find from the information before it that PHS is an agent of the state within the meaning of section 768.28(9).

[10]Because Comeau was a pretrial detainee, "the Eighth Amendment prohibitions against cruel and unusual punishment do not apply." <u>Cook v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1115 (11th Cir. 2005). The standard is the same, however, in prisoner suicide cases whether the claim is brought under the Eighth or Fourteenth Amendment. The Eleventh Circuit has stated that "to prevail under section 1983 for violation of substantive rights, under either the [E]ighth or [F]ourteenth Amendment, the plaintiff must show that the jail official [defendant] displayed 'deliberate indifference' to the prisoner's taking of his own life." <u>Tittle v. Jefferson County, Comm'n</u>, 10 F.3d 1535, 1539 (11th Cir. 1994).

screenings and assessments of inmates at risk of suicide; (7) failed to staff the jail with adequately trained and licensed mental health providers, including psychologists and psychiatrists; (8) failed to ensure that mental health screenings were performed by properly trained and licensed staff or contractors; (9) failed to follow its own policies and procedures regarding suicide prevention; (10) failed to comply with Florida's Model Jail Standards regarding the prevention of inmate suicide; (11) failed to provide Comeau with her prescribed psychiatric medications; and (12) failed to adopt and implement adequate policies and procedures to prevent inmate suicide.[11] (Id. ¶ 55(a)-(l)).

The County has now moved to dismiss Count II, first arguing that Plaintiff failed to identify "an unconstitutional County policy causing injury." (Doc. 5 at 10). However, the County's policy need not be unconstitutional in and of itself if the claim states that the constitutional wrong has been caused by a failure to train employees to properly apply an otherwise facially valid County policy. See City of Canton v. Harris, 489 U.S. 378, 386-89

---

[11]Notably, the acts that Plaintiff classifies as acts of "deliberate indifference" are the exact same acts previously alleged in Count I as negligent acts on the part of the County. In order to establish liability against the state in a § 1983 claim for a prisoner suicide, a plaintiff must show that a jail official displayed deliberate indifference to the prisoner's taking of his own life. This deliberate indifference standard has been equated to "reckless" and "willful and wanton" conduct. See Smith v. Brevard County, Florida, No. 6:06-cv-715-Orl-31JGG, 2006 WL 2355583, at *5 (M.D. Fla. Aug. 14, 2006). Because the state has not waived sovereign immunity for the acts of its officers, employees, or agents when these acts are "committed . . . in a manner exhibiting wanton and willful disregard of human rights, safety, or property," § 768.28, Fla. Stat., it follows that the state cannot be held liable both for a § 1983 claim for a prisoner suicide and for a negligence claim of wrongful death. Because a plaintiff is entitled to plead alternative theories of recovery in federal court, Plaintiff may—at this juncture—proceed under both theories. The Court notes, however, that if Plaintiff is able to prove his case Plaintiff may recover under one theory or the other, but not both.

(1989). Count II clearly alleges, among other things, that the County failed to adequately train and supervise its jail staff regarding the prevention of prisoner suicides. (Am. Compl. ¶ 55). Accordingly, Plaintiff has stated a policy of the County for which § 1983 allows recovery.

The County also argues that Plaintiff failed to state a claim of deliberate indifference under § 1983. (Doc. 5 at 10-11). "'[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under . . . the . . . fourteenth amendment, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life.'" Cagle v. Sutherland, 334 F.3d 980, 986 (11th Cir. 2003) (quoting Edwards v. Gilbert, 867 F.2d 1271, 1274-75 (11th Cir. 1989)). "The deliberate indifference standard 'requires a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'" Id. (quoting Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990)) (emphasis in original).

To establish deliberate indifference on a defendant's part, a plaintiff must show that "the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence. Id. at 987. Moreover, "'the mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners.'" Id. at 986 (quoting Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994)). "Absent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference." Popham, 908 F.3d at 1564.

Here, Plaintiff has alleged that the County had actual knowledge of a strong likelihood

that Comeau would attempt suicide while incarcerated.  First, the Amended Complaint states that the County knew that Comeau had previously attempted suicide within the last month while in the County's custody and after having denied any intent to harm herself.  (Am. Compl. ¶¶ 54(a)-(b)).  Additionally, Plaintiff avers that the County knew of Comeau's risk of suicide because the "jail intake forms noted that . . . Comeau was a suicide risk."  (Id. ¶¶ 54(a)-(b)).  Finally, Plaintiff claims that the staff had been warned via a 9-1-1 call that Comeau had recently threatened to commit suicide after her latest arrest.  (Id. 54(f)).  Taking the allegations as true as it must at this stage, the Court finds that Plaintiff has stated a claim of deliberate indifference on the County's part.

    ii.  Count IV—PHS

    In Count IV, Plaintiff alleges that PHS is liable under § 1983 for violating Comeau's rights under the Eight and Fourteenth Amendments because PHS is a private entity contracting with the County to perform a function traditionally within the exclusive prerogative of the State.  (Am. Compl. ¶ 70).  Plaintiff states that PHS was aware of numerous complaints of inadequate medical screenings, failures to provide prescribed medications, and inmate suicides.  (Id. ¶ 71).  Additionally, the Amended Complaint claims that PHS had knowledge of Comeau's likelihood to attempt suicide based on PHS's prior treatment of her, correspondence with Comeau's family, and reports from jail staff of the 9-1-1 call alerting them to Comeau's threat of suicide.  (Id. ¶ 72).  Despite this knowledge, Plaintiff avers that PHS acted with deliberate indifference by failing to prevent Comeau from committing suicide when it, among other things, failed to provide prescribed psychiatric medications and inadequately trained its staff to provide mental health screenings for the risk of suicide.  (Id.

¶ 73).

PHS now moves to dismiss Count IV, presenting many of the same arguments as the County: (1) that Plaintiff has failed to allege the existence of a policy or custom causally related to Comeau's death, and (2) that Plaintiff has failed to allege facts sufficient to establish deliberate indifference on the part of PHS. The Court's reasoning for denying the County's motion regarding Count II applies equally to PHS's arguments, and accordingly, PHS's motion is denied regarding Count IV.

### iii. Count V—Chandler-Ford

In the Amended Complaint, Plaintiff states that "Chandler-Ford is sued in her supervisory capacity." (Am. Compl. ¶ 8). However, it is unclear to the Court whether Plaintiff is suing Chandler-Ford in her official capacity or her individual capacity. Supervisors may be liable in either their official or individual capacity for the acts of their subordinates when the supervisor either "personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). However, when a government official is sued in an official capacity under § 1983, the suit is "another way of pleading an action against an entity of which an officer is an agent," and therefore duplicative of the § 1983 claim already alleged against the County in Count II. Busby v. Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1984)). If Plaintiff is suing Chandler-Ford in her individual capacity, Chandler-Ford needs the benefit of this knowledge in order to present an effective defense. Accordingly, Count V will be dismissed without prejudice with leave to refile.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The County and Chandler-Ford's Motion to Dismiss (Doc. 5) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** insofar as that Count V is dismissed without prejudice and is **DENIED** in all other respects.

2.  PHS's Motion to Dismiss (Doc. 6) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Count III and **DENIED** as to Count IV.

3.  Plaintiff is granted leave to file an Amended Complaint on or before March 31, 2010.[12]

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 8th day of March, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to Counsel of Record

---

[12]Also pending before this Court is Plaintiff's "Motion for Leave to Amend Complaint" (Doc. 20) in which Plaintiffs request leave of Court to file a Second Amended Complaint to add claims under Florida's Vulnerable Adult Law and claims for punitive damages and to address pleading issues raised in the motions to dismiss.  Upon receipt of Defendants' responses, the Court will issue a separate Order regarding the propriety of adding these additional claims.