**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DONALD ARTHUR COMEAU,
as Personal Representative of the
Estate of Muriel Edna Diluzio Comeau,**

        **Plaintiff,**

**-vs-**                                  **Case No. 6:09-cv-1907-Orl-28KRS**

**VOLUSIA COUNTY and PRISON
HEALTH SERVICES, INC.,**
        **Defendants.**
_____

# ORDER

Plaintiff sued the Defendants alleging violations of both federal and Florida law in connection with the death of Muriel Edna Diluzio Comeau ("Comeau") during her incarceration at the Volusia County Jail. This cause is before the Court on the motions to dismiss filed by Defendants Volusia County ("the County") and Prison Health Services, Inc. ("PHS") (Docs. 27 & 28). Plaintiff has filed Responses (Docs. 29 & 30) thereto, and the motions are now ripe for adjudication.

## I. Background

The factual allegations surrounding Comeau's suicide and the claims for wrongful death and constitutional violations stemming therefrom have been set forth in detail by this Court in a prior Order. (See Doc. 21 at 2-5). As no new significant details have been added in the Second Amended Complaint ("SAC"), the Court need not reiterate those factual allegations here. However, in addition to the previously-alleged claims, Plaintiff has included

in the SAC claims for Neglect of a Vulnerable Adult under Section 415.1111, Florida Statutes, against both the County (Count III) and PHS (Count VI), arguing that Defendants neglected Comeau, who was allegedly a "vulnerable adult" as defined by the applicable state statute. Defendants have now moved to dismiss all counts.

## II. Standard of Law

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Analysis

### A. Wrongful Death Claims (Counts I & III)

#### 1. Count I—The County

The County argues in its motion that Count I should be dismissed because: (1) there are no factual allegations in the SAC sufficient to establish PHS as an agent of the County and the County cannot be held vicariously liable for the actions of an independent contractor;

(2) there is "no mention in the [SAC] that the County was served with a notice of intent [to sue] with an expert affidavit as required by" section 766.203, Florida Statutes; and (3) the County is immune from tort liability for improper retention of PHS because the retention of PHS is a discretionary function. The County's first argument has been addressed in a prior Order. (See Doc. 21 at 7) The Court reiterates that Plaintiff has not alleged that the County is vicariously liable for the actions of an independent contractor. Instead, Plaintiff alleges that "Volusia County, by and through its servants, agents, and employees, negligently violated" its duties to Comeau. (Doc. 26 ¶ 49). As the Court has nothing before it to rebut Plaintiff's assertion that PHS acted as an agent of the County and the allegations set forth in the SAC must be taken as true, Plaintiff has set forth sufficient factual allegations to state a cause of action against the County. The veracity of Plaintiff's allegations, however, will be tested through the discovery process, and the County is free to reassert its arguments regarding PHS's status as an independent contractor in a motion for summary judgment.

The County also argues that Count I should be dismissed because Plaintiff failed to comply with the pre-suit requirements of chapter 766, Florida Statutes. (Doc. 27 at 8-9). Florida law "sets out a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be brought in court." Kukral v. Mekras, 679 So. 2d 278, 280 (Fla. 1996). Specifically, the County contends that Plaintiff failed to serve the County with a notice of the intent to sue containing the requisite expert affidavit corroborating that reasonable grounds exist to initiate litigation. (Doc. 27 at 8-9). Plaintiff, however, states in the SAC that "[a]ll conditions precedent contained in Chapter 766 of the Florida Statutes have been fully complied with." (SAC ¶ 46). The County has

provided no evidence other than its own unsupported statement to rebut this assertion. Because at the motion-to-dismiss stage the Court accepts the factual allegations in a complaint as true, the County's motion to dismiss on this ground will be denied without prejudice.

Finally, the County requests that the Court dismiss Plaintiff's claims regarding improper retention because Florida—and by extension, its counties—has not waived sovereign immunity for discretionary, planning-level governmental functions. (Doc. 27 at 5-7). To determine whether a governmental action qualifies as a "discretionary governmental process" that enjoys sovereign immunity, the Florida Supreme Court has set forth a four-part test. Commercial Carrier Corp. v. Indian River County, 371 So. 2d 1010, 1919 (Fla. 1979). This test is as follows:

> 1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

Id. Assuming that these questions "can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom." Id. "If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending

upon the facts and circumstances involved." Id. Because answering these questions requires a fact-intensive inquiry, dismissal at this stage would be improper.

### 2. Count IV—PHS

PHS presents several arguments as to why Count IV should be dismissed, but the Court finds none of these arguments availing. First, PHS states that "Plaintiff has failed to state a cause of action pursuant to Florida's medical malpractice statute and therefore, Count IV should be dismissed." (Doc. 28 at 4). PHS appears to argue that this is so because Plaintiff has alleged that PHS—through its agents, servants, and employees—acted with gross negligence. (Id.). However, PHS has provided no authority for its position that Florida has barred actions for medical malpractice when the allegations set forth a standard of gross negligence rather than ordinary negligence, and the Court will create none here.

PHS also reasserts its position—previously examined by this Court and rejected—that PHS is "entitled to sovereign immunity as an agent of the State." (Id. at 5). In rejecting PHS's contention in the prior motion to dismiss, the Court stated:

> Under Florida law, the status of a party as an agent to whom the protection of section 768.28(9) would flow is a question of fact turning upon the degree of control retained or exercised by the state. See Stoll v. Noel, 694 So. 2d 701, 703 (Fla. 1997). Other than a general assertion that it "provided medical and psychiatric services to inmates at the Volusia County Branch Jail pursuant to a contract with Volusia County," PHS has provided no support for its contention that it is an agent of the state. (Doc. 6 at 5). PHS has not attached a copy of the employment contract with Volusia County detailing the degree of control retained by the state or expressing the intent of PHS and the County to create an agency relationship. Accordingly, this Court cannot find from the information before it that PHS is an agent of the state within the meaning of section 768.28(9).

(Order, Doc. 21, at 9 n.9). In its present motion to dismiss, PHS has once again provided

no information by which this Court can determine whether PHS is an agent of the state within the meaning of section 768.28(9). Accordingly, the Court rejects this argument for the same reasons set forth in the Court's March 8, 2010 Order.

Finally, PHS argues that punitive damages are unavailable in claims arising from medical negligence. Citing section 766.207(7)(d), Florida Statutes, PHS states that "[p]unitive damages shall not be awarded in a medical negligence case." (Doc. 29 at 4). PHS fails to inform the Court, however, that the cited section applies to "Voluntary binding arbitration of medical negligence claims," a process to which the parties have not elected to submit themselves. As the parties have not sought binding arbitration and PHS has provided no other authority as to why punitive damages should be barred, the Court rejects this argument as well.

### B. § 1983 Claims (Counts II & V)

#### 1. Count II—the County

The County requests that this Court dismiss Count II against it for a number of reasons. First, the County claims that Plaintiff's "constitutional claim must be based on the violation of a constitutional right and Comeau had no constitutional right" that the County follow its written policies and procedures pertaining to suicide prevention and to comply with the Florida Model Jail Standards. (Doc. 27 at 12). The County apparently confuses the alleged acts that Plaintiff maintains establish the requisite degree of deliberate indifference necessary to sustain her claim with the constitutional right alleged to have been violated. Plaintiff alleges that while in jail Comeau had a constitutional right "to be protected from a strong likelihood of self harm, including suicide," not that Comeau had a constitutional right

for the County to follow its own policies and procedures. (SAC ¶ 54). Plaintiff merely alleges that the County's failure to follow such policies and procedures is evidence of the County's deliberate indifference to a known risk of suicide, and by this deliberate indifference, the County violated Comeau's constitutional rights.

The County next argues that Plaintiff's allegations that the County failed to maintain constant watch and close supervision of Comeau and that the County failed to adopt and implement adequate suicide prevention policies and procedures "[do] not rise to [a] constitutional magnitude" because "[t]hese claims sound in negligence." (Doc. 27 at 12-13). Plaintiff, however, has alleged that these acts constitute deliberate indifference, not negligence. (See SAC ¶¶ 58-63). Whether these acts amount to negligence or deliberate indifference is a question of fact to be answered in the discovery process.

Finally, the County argues that Plaintiff has failed to provide facts supporting the existence of a policy or custom of the County and that the allegations set forth do not rise to the level of deliberate indifference. The Court finds that Plaintiff has adequately alleged a policy of the County for which § 1983 allows recovery and, taking the facts as alleged to be true as the Court must at this stage, that Plaintiff has alleged that the County acted with the requisite deliberate indifference.

### 2. Count V—PHS

PHS requests that the Court dismiss Count V, arguing that "[a] plain reading of Plaintiff's [SAC] establishes that PHS and its agents were not deliberately indifferent to [Comeau's] medical needs." (Doc. 28 at 11). Because the Court has already found that Plaintiff has stated a claim for deliberate indifference, PHS's motion is denied.

### C. Neglect of a Vulnerable Adult (Counts III & VI)

In Counts III and VI, Plaintiff seeks damages against Defendants for violations of Florida's Adult Protective Services Act, sections 415.101-.113, Florida Statutes. Section 415.1111, Florida Statutes, states that a "vulnerable adult [or the personal representative of the estate of a deceased victim] who has been abused, neglected, or exploited . . . may recover actual and punitive damages for such abuse, neglect, or exploitation." § 415.1111, Fla. Stat. The County argues that Plaintiff does not allege sufficient facts in the SAC to establish that Comeau was a "vulnerable adult," that the County was a "caregiver," or that there was any "abuse," "neglect," or "exploitation" as these terms are defined under the statute. (Doc. 27 at 18). PHS also argues that it is not a caretaker under Chapter 415 and that the statute was not intended to provide an alternative cause of action for medical negligence. (Doc. 28 at 12).

A "vulnerable adult" is defined by statute to include "person[s] 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, long-term physical, or developmental disability." § 415.102(26), Fla. Stat. In the SAC, Plaintiff states that "the Medical Department" received information that "Comeau had anxiety and depression and may be bi-polar." (SAC ¶ 19). Additionally, Plaintiff alleges that Comeau herself informed an EMT with the Medical Department that "she had a history of mental health problems, had been diagnosed with major depression[,] and had attempted suicide the month before while at the jail," and that the EMT noted her history of mental health issues. (Id. ¶¶ 28-29). Further, the SAC states that Defendants were informed that Comeau had made a recent

threat of suicide during her last incarceration. (Id. ¶¶ 31-32).

Section 415.102(4), Florida Statutes defines a "caregiver" as:

> a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a vulnerable adult on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists. "Caregiver" includes, but is not limited to, relatives, household members, guardians, neighbors, and employees and volunteers of facilities as defined in subsection (8). For the purpose of departmental investigative jurisdiction, the term "caregiver" does not include law enforcement officers or employees of municipal or county detention facilities or the Department of Corrections while acting in an official capacity.

§ 415.102(4), Fla. Stat. Under the facts as alleged in the SAC, the County and PHS qualify as caregivers. The County and PHS assumed the responsibility for Comeau's care when she was placed in their custody. Further, the County's argument that it cannot be liable because county detention facilities "are specifically excluded from the definition of 'caregiver'" is spurious at best. (Doc. 27 at 18). The County fails to include the introductory phrase of the statute explaining that this claimed exclusion applies "[f]or the purpose of departmental investigative jurisdiction," a situation different than that presented here where Plaintiff is pursuing a civil action, not a departmental investigation. The Court finds that Plaintiff has adequately alleged sufficient facts to survive a motion to dismiss.

In addition to its position that PHS is not a caregiver, PHS argues that Chapter 415 "'was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence.'" (Doc. 28 at 12 (quoting Bohannon v. Shands Teaching Hosp. & Clinics, Inc., 983 So. 2d 717, 721 (Fla. 1st DCA 2008)). "The question in determining if a claim is a medical malpractice claim is whether the plaintiff must rely upon the medical

-9-

negligence standard of care, as set forth in section 766.102(1), Florida Statutes . . ., in order to prove the case." Tenet S. Fla. Health Sys. v. Jackson, 991 So. 2d 396, 399 (Fla. 3d DCA 2008). Section 766.102(1) requires that a claimant must "prov[e] by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider." § 766.102(1), Fla. Stat. Because at this stage it appears that some of the allegations against PHS can be proven without comparing the alleged negligent action with that of the prevailing standard of care in the community, PHS's motion is denied.

### IV. Conclusion

In accordance with the foregoing discussion, it is hereby **ORDERED** that Defendants' motions to dismiss (Docs. 27 & 28) are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 7th day of June, 2010.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party